United States District Court
Southern District of Texas
**ENTERED**
July 24, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEVIN A., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-CV-03771 |
| | § | |
| FRANK BISIGNANO, | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Court is Plaintiff's Motion for Summary Judgment (ECF 9) and Defendant's Motion for Summary Judgment.[1] ECF 16. After considering the Parties' arguments, the record, and the applicable law, the Court RECCOMENDS Plaintiff's Motion (ECF 9) be DENIED, Defendant's Motion (ECF 16) be GRANTED, and the Commissioner's Decision be AFFIRMED.

### I. Factual and Procedural Background.

On August 16, 2023, Plaintiff Kevin A. filed a Title II application for disability insurance benefits. Tr. 21. The application alleged a disability onset date of August 26, 2022. *Id.* Plaintiff's claim was denied on January 4, 2024, and again upon reconsideration on April 22, 2024. *Id.* On September 27, 2024, the

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 5.

Administrative Law Judge ("ALJ") held a telephonic hearing at which Plaintiff was represented by counsel. *Id.* On October 18, 2024, the ALJ issued a written decision finding Plaintiff not disabled. Tr. 21-31. The Appeals Council denied Plaintiff's request for review on June 3, 2025. Tr. 1–6. Plaintiff sought judicial review in this Court.

On October 31, 2025, Plaintiff filed his Motion for Summary Judgment. ECF 9. On January 21, 2026, Defendant filed his Motion for Summary Judgment (ECF 16), to which Plaintiff filed a reply (ECF 17). The Motions are ripe for consideration.

**A. Plaintiff's Testimony.**

The ALJ summarized Plaintiff's testimony from the September 27, 2024, hearing as follows: "He cannot work due to back pain, knee pain, and neck pain. He cannot stand for very long or grip/hold anything. He drops items and breaks them. He can sit in a chair for 10 to 15 minutes before he needs to move around. He is never comfortable and always needs to move. His feet go numb, he becomes dizzy, and he needs to make sure there is something nearby to brace himself on. He becomes dizzy 6 to 7 times a day. He wears knee braces on both of his knees. He cannot bend over and tie his shoes without being in pain. He has limited range of motion in his knee and cannot turn his head side to side. He has shoulder pain that impacts his ability to lift overhead. He has pain holding his toothbrush. His wife handles his medications and must remind him to shower. He does not keep in touch

with people and panics if he is away from the house. He does not interact with anyone because it causes him anxiety. His ADHD keeps him from remembering things. He has trouble completing tasks and forgets the names of places. He cannot do many activities of daily living due to his impairments. He is not reliable enough to drive." Tr. 27.

**B. Medical Evidence.**

The medical records span 2020 to 2024 and include medical opinions from state agency medical consultants Drs. Laurence Ligon and Kim Rowlands and state agency psychological consultants Drs. Robert B. White and Sarah Jackson. Tr. 58-66, 67-73. The record includes two opinions from Plaintiff's treating psychiatrist at a Department of Veterans Affairs ["VA"] clinic, Dr. Gurlej Mann. Tr. 1422-27, 2013-14.

## II. Standard of Review for the Commissioner's Decision.

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[2] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). The standard of review for social security disability claims is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). A court will not re-weigh the evidence, and in the event of evidentiary conflict or uncertainty, will not substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (internal quotation marks and citation omitted). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.*

When determining whether a claimant is disabled, the ALJ must follow a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any

[2] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove he is not currently working and is no longer capable of performing his past relevant work. *Newton*, 209 F.3d at 453. If the claimant meets his burden, the burden shifts to the Commissioner at Step Five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*. Thus, for the Commissioner to find in Step Five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given his RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

## III. Analysis.

The ALJ performed the standard five-step sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Social Security Act from

his alleged onset date (August 26, 2022) through his date last insured (March 31, 2024). Tr. 30. The Court reviews each step of the ALJ's analysis below.

**A. Step One.**

At Step One, the ALJ decides whether the claimant is currently working or "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571. If so, the claimant is not disabled. Here, the ALJ found Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of August 26, 2022, through his date last insured of March 31, 2024." Tr. 24. Plaintiff does not allege error at Step One.

**B. Step Two.**

At Step Two, the ALJ determines whether the claimant has a severe impairment. "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (internal quotations omitted). "If [a claimant does] not have any impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities," the Social Security Regulations require a finding that the claimant does "not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 404.1520c.

The ALJ found Plaintiff has the severe impairments of "ADHD, generalized anxiety disorder, autism spectrum disorder, bilateral carpal tunnel syndrome, and patellofemoral disorder." Tr. 24. The ALJ also found Plaintiff had medically determinable impairments of sleep apnea and obesity, which the ALJ found to be not severe. Tr. 24. *See also* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe"). The ALJ noted that Plaintiff was diagnosed with De Quervain tenosynovitis, lipoma, and non-alcoholic steatohepatitis, but the ALJ did not consider these impairments in this case because the diagnoses occurred after the relevant period. *Id.*

Plaintiff fails to allege error at Step Two.

**C. Step Three.**

Step Three requires the ALJ to determine whether the claimant's severe impairments meet or medically equal one of the listings in the regulations known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, app. 1. "For a claimant to show that her impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). For a claimant to show that an impairment "medically equals" a listed impairment the claimant "must present

medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original).

The ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in Appendix 1. Tr. 24-26. The ALJ considered listing 1.18 with regards to Plaintiff's patellofemoral disorder but found no documented medical need for a walker, bilateral canes, bilateral crutches, or a seated mobility device involving the use of both hands, or other inability to use the upper extremities to complete work-related activities. Tr. 25. The ALJ considered Plaintiff's bilateral carpal tunnel syndrome under listing 11.14, but the ALJ found no evidence of disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand from a seated position, balance, or use the upper extremities. *Id.*

The ALJ also considered Plaintiff's mental impairments, singly and in combination, and found that they did not meet or medically equal the criteria in listings 12.06, 12.10, and 12.11. Tr. 25-26. The ALJ noted that Plaintiff had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing

himself. Tr. 25-26. Plaintiff does not have either one extreme[3] mental limitation or two marked mental limitations and therefore he does not meet the Paragraph B requirements for the listings. Tr. 26. *See also, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.

The ALJ then considered the Paragraph C requirements for listings 12.06, 12.10, and 12.11 but found Plaintiff did not meet them. Tr. 26. *See also, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04(c)).

Plaintiff does not allege error at Step Three.

**D. Step Four.**

Prior to Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC") to decide whether the claimant can still perform past relevant work. "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545. The ALJ is solely responsible for determining the claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ then considers whether the

[3] A five-point scale is used to evaluate mental limitations: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).

claimant has past relevant work experience, and if so, whether the limitations in the RFC would allow the claimant to perform his past relevant work. 20 § C.F.R. 404.1520(a)(4)(iv). If the claimant can still perform his past relevant work with the restrictions included in the RFC, then the claimant is not disabled. *Id.*

The ALJ found that through the date last insured, Plaintiff had the RFC to perform light work[4] except

> the claimant can occasionally climb, balance, stoop, kneel, crouch and crawl. The claimant can frequently handle, finger, push and pull with the bilateral upper extremities. The claimant can understand, remember and carry out detailed, but not complex, instructions in a work environment that does not require a specific production rate, such as assembly line work, or hourly quotas. The claimant can make decisions and adapt to and manage frequent, but not constant, changes in the work setting. The claimant can have no more than occasional interaction with supervisors, coworkers, and the public.

Tr. 26.

Plaintiff raises several errors at Step 4. Plaintiff argues the ALJ erred in formulating the mental RFC and the mental RFC is not supported by substantial evidence. ECF 10 at 5-16. Plaintiff asserts the ALJ erred in assessing Plaintiff's physical impairments. *Id.* at 16-19. Plaintiff claims the ALJ erred in conducting the

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

subjective symptom analysis. *Id.* at 19-20. Plaintiff also claims the ALJ erred in failing to consider the disability determination of another government agency. *Id.*

**1. The ALJ did not err in assessing the mental RFC.**

**a. The ALJ did not err in analyzing Dr. Mann's opinion.**

Under the revised rules for evaluating medical opinions, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior medical findings in [his] determination or decision." 20 C.F.R. § 404.1520c(b)(2). "Supportability" focuses on how well the medical evidence and supporting explanations given by the medical provider support the provider's opinion. *Kilby v. Kijakazi*, No. 4:20-CV-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency," on the other hand, is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)). The ALJ must articulate "a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Puckett v. Kijakazi*, No. 4:22-CV-4542, 2024 WL 1260268, at *4 (S.D. Tex. Feb. 9, 2024), *report and recommendation adopted*, No. 4:22-CV-04542, 2024 WL 1259278 (S.D. Tex. Mar. 25, 2024). *See Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) ("The ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination.").

Additionally, the ALJ need not use the words "supportability" and "consistency" in order to comply with applicable standards. *See Keel*, 986 F.3d at 556 (stating in discussion of the severity standard "[a] case will not be remanded simply because the ALJ did not use 'magic words.'").

The ALJ found Dr. Mann's opinion that Plaintiff would not be a candidate for competitive work, due to his anxiety and depression, unpersuasive. Tr. 29. The ALJ found the opinion was not consistent with the record medical evidence and was unsupported by Dr. Mann's treatment notes, which "showed multiple either unremarkable or sporadic findings." *Id.* Plaintiff argues that the ALJ erred in the supportability analysis because other evidence in the medical record corroborates Dr. Mann's opinion. ECF 10 at 7.

The ALJ did not err in analyzing the supportability of Dr. Mann's opinion. The ALJ cited multiple instances where Dr. Mann's treatment records did not support his opinion because they contained unremarkable findings or symptoms the severity of which did not support Dr. Mann's opinion. Tr. 29. The medical records the ALJ cited demonstrate that Plaintiff repeatedly denied symptoms of anxiety, and Dr. Mann noted several times that Plaintiff was alert, oriented, cooperative, logical, attendant to conversation, and capable of remote recall. *See also, e.g.*, Tr. 358, 1597-98, 1642-43, 1649, 1657, 1672-73, 1683-85. While Plaintiff may point to contradictory evidence in the record that could support Dr. Mann's opinion, the ALJ,

not the Court, is responsible for weighing the evidence as part of the supportability analysis. The ALJ addressed Dr. Mann's opinion and explained that his treatment notes did not support his conclusion by identifying specific instances in the record. Thus, although the ALJ's discussion is quite brief, his record citation builds the required logical bridge between his finding and the record.

**b. The ALJ did not err in analyzing Dr. White's opinion.**

Plaintiff argues that Dr. White's opinion is "not supported in light of the total evidence of record," and therefore the ALJ improperly relied on Dr. White's opinion when forming Plaintiff's mental RFC. ECF 10 at 8. *Id.* Plaintiff does not challenge the ALJ's persuasiveness analysis, and the Court is limited to considering errors raised in the Parties' briefs. *See Benson v. Comm'r of the Soc. Sec. Admin.*, No. 9:02-CV-57, 2004 WL 3237348, at *3 (E.D. Tex. Aug. 30, 2004) (collecting cases). To the extent Plaintiff asserts Dr. White's opinion cannot form the basis for the RFC determination because other evidence purportedly contradicts his opinion, the argument must fail.

The ALJ found Dr. White's opinion persuasive, noting his finding of mild limitations was consistent with the medical evidence and supported by the lack of notable record findings. Tr. 29. Absent an error in the ALJ's persuasiveness analysis, which Plaintiff fails to allege, there is no basis to reject Dr. White's opinion as support for the RFC determination. Although Plaintiff contends the opinion is

contradicted by evidence in the record, the "ALJ has broad discretion to resolve conflicts in the evidence without a court second-guessing him." *Gonzales v. Comm'r of Soc. Sec.*, No. 7:22-CV-062-O-BP, 2023 WL 5155774, at *4 (N.D. Tex. Jan. 30, 2023), *report and recommendation adopted,* No. 7:22-CV-062-O-BP, 2023 WL 5155770 (N.D. Tex. Aug. 10, 2023). The Court cannot re-weigh the evidence. Because Plaintiff does not allege, and the Court does not find, that the ALJ erred in finding Dr. White's opinion persuasive, and because it is for the ALJ to weigh conflicting record evidence, the ALJ did not err by relying on Dr. White's opinion to form the RFC.

**c. The mental RFC is supported by substantial evidence.**

Plaintiff argues the mental RFC[5] is not supported by substantial evidence because the ALJ found Dr. Mann's opinion unpersuasive and then impermissibly relied on his lay analysis of the medical record to craft the RFC's mental restrictions. ECF 10 at 7-8.

The ALJ did not base the RFC on his lay assessment of the medical record but rather on the persuasive opinion of the state psychological consultant Dr. White. Tr. 29. Dr. White opined that Plaintiff's ADHD and mood-related symptoms would

[5] "The claimant can understand, remember and carryout detailed, but not complex, instructions in a work environment that does not require a specific production rate, such as assembly line work, or hourly quotas. The claimant can make decisions and adapt to and manage frequent, but not constant, changes in the work setting. The claimant can have no more than occasional interaction with supervisors, coworkers, and the public." Tr. 26.

somewhat limit his focus, concentration, pace, and persistence. Tr. 63. Dr. White further found Plaintiff's conditions somewhat limited his ability to interact with others. *Id.* Dr. White also noted that Plaintiff's conditions somewhat limited his ability to handle stress or changes to his work environment. *Id.* Finally, Dr. White concluded that despite these limitations, Plaintiff could "understand, remember and carry out detailed, noncomplex instructions, make decisions and concentrate for extended periods, interact appropriately with others and adequately respond to changes." Tr. 65.

While not a model of clarity, the ALJ's discussion of Plaintiff's mental impairments (Tr. 28) specifically relies on the assessment of Dr. White. Tr. 61, 29 ("the undersigned finds that the limitations in the above-mentioned statements from . . . Dr. White are supported as detailed above"). The ALJ's discussion follows Dr. White's assessment, stating that Plaintiff required a restriction to detailed, noncomplex instructions and occasionally interaction with the public due to the mild to moderate limitations on his concentration, adaptability, and ability caused by his mental impairments. *Compare* Tr. 28-29, *with* Tr. 63-64. Thus, the mental RFC is supported by substantial evidence.

**d. The ALJ properly explained how the RFC was based on Dr. White's opinion and the medical evidence.**

Plaintiff claims the ALJ failed to explain how the RFC was based on Dr. White's medical opinion on a conclusion-by-conclusion basis as required by Social

Security Ruling ("SSR") 96-8p. *Id.* at 8. SSR 96-8p requires "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). *See also Prather v. Colvin*, No. A-12-CV-1075-AWA, 2014 WL 4187124, at *6 (W.D. Tex. Aug. 21, 2014) (explaining that SR 96-8p requires the ALJ "(1) assess the work-related mental activities and (2) provide a narrative discussion connecting specific evidence in the record to his or her conclusions.").

The ALJ's decision specifically explains the limitations for detailed but not complex work in a non-quota setting, occasional social interaction, and frequent but not constant changes. Tr. 26. The ALJ specifically mentions that although Plaintiff's memory and concentration was intact, anxiety and ADHD could manifest differently in the workplace, requiring the limitation to detailed but not complex tasks. Tr. 28. Similarly, the ALJ noted that Plaintiff's anxiety limited his ability to interact with others, but that his ability was not completely eroded, requiring a limitation to occasional interaction with others. *Id.*

Further, SSR 98-6p is satisfied when the ALJ's determination is supported by substantial evidence and based on a medical opinion that contains a function-by-function analysis. *Bazemore v. O'Malley*, No. 4:23-CV-02948, 2024 WL 5354870,

at *8 (S.D. Tex. Oct. 24, 2024) (collecting cases). The ALJ specifically references and incorporates Dr. White's findings, which include a function-by-function assessment. Tr. 63-64. Those findings explain Plaintiff's pace and concentration limitations, including the need for the quota-work prohibition, and Plaintiff's adaptability limitations, supporting the flexibility restrictions. Tr. 64. Therefore, the ALJ did not err in explaining the bases for the mental RFC.

**e. The ALJ did not err by failing to explain how the RFC accounts for Plaintiff's limitations in concentration, persistence, pace; absenteeism; and social interaction.**

In a series of arguments related to the contention that the ALJ failed to do a function-by-function explanation of the RFC, Plaintiff asserts the ALJ erred by failing to account for specific limitations as required by SSR 96-8p. ECF 8 at 10-16. Plaintiff claims remand is required because: "the ALJ has omitted or ignored significant mental health evidence" related to concentration, persistence, and pace (*Id.* at 10); the ALJ failed to reconcile the record evidence showing persistence issues with the VE's testimony on the impact of absenteeism (*Id.* at 12); and the social interaction limitation "does not account for the full extent of Plaintiff's social difficulties as reflected in the medical records." *Id.* at 13.

These arguments rely on the assumption that the ALJ made a mental impairment determination at Step 2 which was not accounted for at Step 4. At Step 2, the ALJ found Plaintiff had a mild limitation in understanding, remembering, or

applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing himself. Tr. 25-26. As the ALJ explained in his decision, "the limitations identified in the [Step 2 analysis] are not a residual functional capacity assessment." Tr. 26. "[T]he regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Patterson v. Astrue*, No. CIV A 108-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009).

Despite Plaintiff's contention to the contrary (ECF 10 at 10), the ALJ based the RFC on Dr. White's persuasive opinion and explained the basis for the different restrictions regarding pace, persistence, concentration, interaction with others, and adaptability. The RFC was crafted to accommodate Plaintiff's limitations as described in Dr. White's opinion. Tr. 63-65. The Court cannot accept Plaintiff's invitation to reconsider medical evidence because weighing evidence and resolving discrepancies remain the domain of the ALJ.

### 2. The ALJ did not err in assessing the physical RFC.

Plaintiff argues the ALJ erred by failing to consider all record evidence in assessing the physical RFC,[6] and therefore the RFC is not supported by substantial evidence. ECF 10 at 16-19. In support of this argument, Plaintiff points to his own testimony regarding his physical limitations and Dr. Mann's discussion of the impact of his mental impairments on his pain tolerance. *Id.* at 17.

The ALJ properly considered Plaintiff's testimony and found it was not entirely consistent with the objective medical evidence in the record. Tr. 27. Citing to the record, the ALJ explained that examinations demonstrated that Plaintiff maintained good grip, normal use of extremities, and had some back stiffness. Tr. 27-28. To accommodate his carpal tunnel syndrome and patellofemoral disorder, the ALJ included weight restrictions for lifting and carrying, as well as handling, as recommended in Dr. Ligon's persuasive opinion. Tr. 28-29, 62-63. The ALJ considered the testimony and evidence Plaintiff mentions but found the record supported a less restrictive RFC. The Court cannot reweigh the evidence and Plaintiff identifies no other purported error.

---

[6] Plaintiff is limited to light work except he "can occasionally climb, balance, stoop, kneel, crouch and crawl . . . [and] can frequently handle, finger, push and pull with the bilateral upper extremities." Tr. 26.

**3. The ALJ did not err in analyzing Plaintiff's subjective symptoms.**

SSR 16-3p requires ALJs to consider claimants' statements about their subjective symptoms when considering their ability to work and to assess the symptoms based on objective and subjective evidence in the record. *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). Opinions from district courts in this Circuit hold the ALJ properly considers a plaintiff's subjective symptoms if he completes the two-step process outlined in SSR 16-3p: "(1) consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain and (2) evaluate the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Kerns v. Comm'r of Soc. Sec. Admin.*, No. EP-24-CV-00112-KC-MAT, 2025 WL 2622361, at *5-6 (W.D. Tex. July 18, 2025) (cleaned up, collecting cases), *report and recommendation adopted*, No. EP-24-CV-112-KC-MAT, 2025 WL 2408826 (W.D. Tex. Aug. 20, 2025). The ALJ cannot discount Plaintiff's subjective symptoms solely because they do not align with the objective medical evidence but may weigh the subjective testimony against the objective evidence. *Vernetta Lynn J. v. O'Malley*, No. 4:23-CV-4399, 2025 WL 1485865, at *7 (S.D. Tex. Jan. 8, 2025).

The ALJ weighed the subjective and objective evidence and concluded that Plaintiff's testimony regarding the intensity and persistence of his symptoms was not fully substantiated. Tr. 27. The ALJ discussed Plaintiff's testimony as well as the medical evidence of record. Tr. 27-28. The ALJ did not rely solely on the objective medical evidence in his analysis but specifically mentions Plaintiff's noncompliance with psycho and physical therapy, which had otherwise been beneficial. Tr. 28. *See also* SSR 16-3p, 2017 WL 5180304 at *9 (explaining failure to comply with treatment that might improve symptoms may be considered inconsistent with alleged statements about intensity or persistence of symptoms). Therefore, the ALJ properly analyzed Plaintiff's symptoms by relying on objective medical evidence as well as lack of treatment compliance.

**4. The ALJ did not err by failing to discuss the VA's disability determination.**

Plaintiff argues that the ALJ "improperly discounted" the VA's determination that Plaintiff is 70 percent disabled by failing to mention this finding at all in his decision. ECF 10 at 19-20.

For claims filed on or after March 27, 2017, the SSA regulations do not require ALJs to consider decisions of other government agencies, which are deemed "evidence that is inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c). The regulations specifically state that "we will not provide any analysis about how we considered such evidence in our determination or decision."

*Id.* This regulation specifically relieves ALJs of a duty to discuss a VA disability determination or rating. *Walker v. Saul*, No. 4:19-CV-00338, 2020 WL 3491839, at *5 (S.D. Tex. June 26, 2020). Therefore, the ALJ did not err by failing to consider Plaintiff's VA disability rating.

**E. Step Five.**

At Step Five, the ALJ determines whether the claimant can perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Fraga*, 810 F.2d at 1304. When posing hypothetical questions to a vocational expert to determine whether the claimant can perform work in the national economy, the ALJ must reasonably incorporate all the limitations recognized by the RFC, and the claimant or her representative must be afforded the opportunity to correct any deficiencies in the question. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Masterson*, 309 F.3d at 273.

On the date last insured, Plaintiff was 39 years old, which is considered a younger individual, and Plaintiff possessed at least a high school education. Tr. 29. The ALJ found Plaintiff had no past relevant work experience, so transferability was not an issue. Tr. 29. The ALJ found that through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that he could have performed that existed in significant numbers in the national economy. Tr. 29. The VE testified that Plaintiff could have performed the

requirements of certain light, unskilled occupations such as a non-postal mailroom clerk (approximately 100,000 jobs in the national economy), officer helper (approximately 190,000 jobs), or laundry sorter (approximately 75,000 jobs). Tr. 30.

Plaintiff does not allege error at Step 5.

## IV. Conclusion and Recommendation.

For the reasons stated above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF 9) be DENIED, Defendant's Cross-Motion for Summary Judgment (ECF 16) be GRANTED, and the Commissioner's Decision be AFFIRMED.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on July 23, 2026, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge